In the Matter of the Application of GERTRUDE EPSTEIN, Petitioner, for an Order of Mandamus against THE BOARD OF EXAMINERS OF THE BOARD OF EDUCATION OF THE CITY OF NEW YORK and HENRY LEVY and Others, as Members of Said Board of Examiners, Respondents.

Supreme Court, Special Term, New York County, November 18, 1936.

*Osmond K. Fraenkel,* for the petitioner.

*Paul Windels,* Corporation Counsel [*Seymour B. Quel* of counsel], for the board of examiners of the board of education of the city of New York.

SHIENTAG, J. This is an application by the petitioner for an order of peremptory mandamus directed to the members of the board of examiners of the board of education of the city of New York to issue a license to her as a teacher in training in the subject of English in the day high schools of the city of New York.

Petitioner passed the written and oral examinations for teacher in training. The board of examiners has nevertheless declined to license her. On July 10, 1936, she was advised by the board that she had been denied a license on the ground that " her record was insufficiently meritorious and on the ground of ineligibility." Petitioner claims that she was refused the license solely because of her political and economic views.

Three grounds are urged by the board of examiners in support of the refusal to grant the petitioner her license: *First*, that petitioner was denied a recommendation by the college from which she was graduated, that being one of the requirements for the issuance of a license. *Second*, that an " investigation conducted by the Board of Examiners into the qualifications of the petitioner disclosed facts which led a majority of the Board to conclude that the petitioner's communistic views and her advocacy of them did not qualify her to be licensed as a teacher in the school system of the City of New York * * * that the petitioner had been one of the editors of her college paper and as such had caused to be published various articles attacking the faculty and advocating communism in general, which had caused her ultimate resignation from the college paper." *Third*, that she falsely answered under oath a questionnaire submitted to her by the board of examiners at the time she applied to take the written examination.

The petitioner was graduated from Barnard College, received her degree with honors in English, and was elected to the honorary society of Phi Beta Kappa, a mark of scholarship distinction. While at college she was an editor of the *Barnard Bulletin*, an undergraduate newspaper. Respondents contend that she was compelled to resign her position on the paper because she " caused to be published various articles attacking the faculty and advocating communism in general." Petitioner denies this, and states that her resignation was due to the fact that she took an active part in the students' anti-war movement and that the student council of the college insisted upon censoring the paper even though a student poll opposed such censorship.

The failure of her college to recommend petitioner for a license is, in itself, no justification in law for the refusal to grant her one. This young woman devoted practically her entire life to preparation for a teaching career. It must be assumed, in the absence of

evidence to the contrary, that the institution from which she received her degree would not have awarded it if she had not come up to the necessary requirements. The graduation itself is a stamp of approval, an expression of confidence in the mental and moral qualities of the student. It can hardly be assumed that Barnard College would confer a degree upon any one unless it felt that the graduate possessed the necessary qualifications. Graduation in itself is recommendation. Further affirmative action by the college is unnecessary for eligibility. Nothing is set forth in the papers showing the reasons for the refusal to give the petitioner a recommendation. Those reasons, if they were developed, might have some bearing on her qualifications to teach, but the mere refusal to give the recommendation in and of itself is no ground for denying the license.

With respect to the second ground urged for withholding the license, all that the papers contain are bare conclusions without any facts to support them. The respondents were furnished by petitioner with a complete file of the issues of the *Barnard Bulletin* published while she was an editor, yet, although given an ample opportunity to do so, the board of examiners has failed to set forth any article or extract therefrom showing that the petitioner was a disorderly person, that she improperly criticised the faculty or gave expression to communistic views. Petitioner denies that she is or ever was a member of the Communist party or that she published any article attacking the faculty of her college or giving expression to communistic utterances.

A person is not to be denied a license to teach in the public schools solely because of his economic or political views, nor because he has theretofore given lawful expression to those views. A different situation would be presented if one advocated the overthrow of the government by force or other unlawful means, or where the utterances were such as tended to bring such person into conflict with the Penal Law of the State or were beyond the limits of that freedom of speech guaranteed by our fundamental law. No such situation is presented on the papers before me, and there is no legal basis shown for the refusal of the license on the second ground urged.

Facts may be shown on a hearing tending to support the action of the board of examiners. The manner and the circumstances under which such views were expressed may show lack of qualification to teach, but the record is silent on this point.

The third ground presents a more serious problem. The application or questionnaire dated December 26, 1934, which petitioner was obliged to fill out and swear to prior to taking the examination

called for "complete and accurate statements." One of the questions which all applicants were required to answer was the following: "Experience in a trade, or in clerical work, or in a profession other than education (describe in full your employment for the last five years)." Applicant left the answer to this question blank, thereby implying, according to the contention of the board of examiners, that she had not been engaged in any trade or in any clerical work or profession other than education for five years prior thereto. The failure to answer this question standing alone might constitute no ground for refusing the license, but the petitioner went further. In July, 1935, in response to a letter from the office of the board of examiners, she wrote: "I have been working for Mr. ———————— since the beginning of June, 1935, and I have had no other business or teaching experience since June, 1934." The board of examiners ascertained that after her graduation and before she signed the application to take the examination, she had been employed for a short time on the *Daily Worker*, a Communist newspaper. Petitioner ascribes her failure to mention this employment to its casual and temporary character. In her affidavit she says: "I did some volunteer work for the *Daily Worker* on a part-time basis during the summer of 1934. For a brief period of several weeks I was working on full time and received $10 a week. I stayed there until the latter part of October of that year." She further states: "The meager work that I had done there did not lead me to believe that it was of the kind called for by the question on the blank." It is true that her connection with this newspaper, if disclosed, would not of itself be a sufficient justification for a denial of the license. The failure to answer the question, however, considered in the light of the positive affirmative statement made in her subsequent letter, raises a question as to whether or not the omission was material and deliberate, and calculated to mislead or to withhold from the examiners information they were entitled to receive. The determination of this question may have an important bearing on her fitness to teach in the public schools of our city.

The board of examiners has the right to expect of applicants for licenses to teach "a nice and scrupulous sense of honor which is as unlike mere honesty as the fine Damascus blade is unlike a farming implement." It has a right to expect from them a strong and delicate sense of moral values. The contention of the petitioner is, however, that the refusal of the license on this ground is feigned and not genuine, that it is a subterfuge merely and used to cloak the true reason, namely, dissatisfaction with her economic and political opinions.

The courts should be slow to interfere in matters relating to the internal administration of the department of education. The responsibility for the conduct of our schools rests with the board of education, and it is not alone proper but it is essential that in the first instance, at any rate, disputes in connection with such internal administration should be heard and disposed of within the department itself.

The power of the board of examiners in passing on applications for licenses to teach in the public schools is not an absolute one. That applies also to the action of the State Commissioner of Education. To the extent that the educational authorities exercise a fair and reasonable discretion, their determinations will not be interfered with by the courts. (*People ex rel. Peixotto* v. *Board of Education,* 212 N. Y. 463, 466; *Matter of Crispell* v. *Rust,* 149 Misc. 464, 466; cf. *Matter of Agoglia* v. *Mulrooney,* 259 N. Y. 462; Freund, Administrative Powers over Persons and Property [1928], §§ 135, 137.) Where, however, it is shown that they have refused to accord a proper hearing or that they have acted arbitrarily or in violation of the legal rights of an individual, the persons aggrieved may have recourse to the courts for protection. (*Matter of O'Connor* v.· *Emerson,* 196 App. Div. 807; affd., 232 N. Y. 561; *Matter of Citron* v. *O'Shea,* 244 App. Div. 158; *Matter of Crispell* v. *Rust,* 149 Misc. 464; *Bullock* v. *Cooley,* 225 N. Y. 566, 577.) A person claiming to have been wronged should exhaust his remedies within the department of education itself. (*People ex rel. Walrath* v. *O'Brien,* 112 App. Div. 97; *Matter of McDowell* v. *Board of Education,* 104 Misc. 564, 568; *People ex rel. Keyser* v. *Board of Education,* 32 id. 63, 66.) The fact that such remedy has been resorted to is not a bar to relief in the courts in a proper case. (See *Bullock* v. *Cooley,* 225 N. Y. 566, 577; *Matter of Levitch* v. *Board of Education,* 243 id. 373, 375; *Matter of Birmingham* v. *Graves,* 227 App. Div. 262, 264; *People ex rel. Wood* v. *Graves,* 225 id. 176, 178.) The authorities cited do not support the proposition contended for by the petitioner that once remedies within the department of education have been exhausted, no relief may under any circumstances be obtained in the courts.

Orderly procedure, therefore, where a license has been refused, except in the case of a clear violation of a legal right, requires that a hearing be had before the board of examiners and a record thereof kept. If the determination of the board after such hearing is adverse, an appeal may be taken to the State Commissioner of Education and a similar record made. If it is claimed that a hearing has been improperly refused, that a fair opportunity to present the issues in controversy has not been afforded, or that

the action of the educational authorities is arbitrary, without basis in fact or in violation of law, recourse may be had to the courts for proper relief. That is the procedure that should be followed in this case with respect to all of the grounds urged for refusal of the license and the contentions made by petitioner with respect thereto.

I believe that the petitioner may be assured of a considerate scrutiny of her case at the hands of the educational authorities and that, unless there is some compelling reason to the contrary, they will not allow the career of a young woman to be destroyed because of an indiscretion or misstep on her part. Our mistakes must be paid for, to be sure, but every slip is not fatal nor, to paraphrase an expression of a former chief judge of the Court of Appeals, is every error suicide.

The application is denied, without prejudice and with leave to renew if the petitioner be so advised after she has exhausted her remedies within the department of education in accordance with this opinion. Settle order.