In the Matter of ERNESTINE LEE, Petitioner, against BOARD OF EDUCATION OF THE CITY OF NEW YORK, Respondent.

Supreme Court, Special Term, Kings County, July 24, 1944.

*A. Mark Levien* for petitioner.

*Ignatius M. Wilkinson, Corporation Counsel* (*Nicholas Bucci* of counsel), for respondent.

*Austin B. Mandel* for Swimming Teachers' Association, *amicus curiae.*

FROESSEL, J. This is a proceeding under article 78 of the Civil Practice Act to compel the Board of Education of the City of New York to grant petitioner additional service credit for purposes of seniority, and thereupon to reinstate her to the position of Teacher of Swimming in the day schools maintained by said Board, together with back salary. The matter was originally referred to an Official Referee by an order of this court, dated August 20, 1942, to hear and report upon the issues of fact raised by the pleadings. The parties thereafter entered into a stipulation in writing, dated January 18, 1944, in which they agreed upon certain facts which the Referee adopted. The petitioner has now moved upon said Referee's report and said stipulation and the pleadings for an order for the following relief:

" (1) Amending the petition and reply of the petitioner herein and the answer of the respondent herein so that each of them will conform to the aforesaid stipulation of agreed facts dated January 18, 1944.

" (2) Granting the petitioner a final order herein directing the respondent to reinstate petitioner to a position as teacher of swimming, as of October 10, 1941, pursuant to Section 881 of the Education Law, and further directing that respondent pay the petitioner the difference in salary between the salary of an instructor in showers, which petitioner has been receiving from the respondent since October 10, 1941, and the salary of a teacher of swimming from said October 10, 1941, to the date the respondent reinstates petitioner to the position of teacher of swimming.

" (3) Granting the petitioner such other and further relief as to the Court may seem just and proper in the premises, together with costs of this application."

The relief in subdivision (1) is granted, without objection.

In the stipulation aforesaid, the following facts, among others, were agreed upon. Prior to June, 1936, " there was no regular license of Teacher of Swimming." The teaching of swimming in the day schools was performed by the assignment of persons holding licenses as Teacher of Swimming in Vacation Playground and Evening Recreation Centers or Teacher of Swimming in Community Centers and Playgrounds. These were per diem (per session) assignments, and did not carry tenure. Persons assigned were paid only for the number of sessions during which they rendered service. Eligible lists were prepared by the Board of Examiners for such positions every year, and were limited in duration to one year.

The petitioner held both of these licenses between December 10, 1925, and April 30, 1936. During that period there was an interruption of her service for more than a year on a leave of absence. She rendered no service in the summertime. On April 8, 1936, the Board of Education directed the Board of Examiners " to hold an examination for license for Teacher of Swimming in day schools, limited to persons who were employed as such on April 1, 1936, and had served for at least three years." On May 29, 1936, petitioner filed an application for examination for such license, which required a physical test, including a medical examination and proof of vaccination.

On June 3, 1936, petitioner filed a request, dated May 30, 1936, for a maternity leave of absence from May 11, 1936, to May 10, 1938. The request was granted at a meeting of the Board of Superintendents held on June 4, 1936. Concededly, the fact that petitioner was pregnant did not bar her from taking the physical examination, which was scheduled for June 3, 1936; because of her pregnancy she chose not to undergo such an examination at

the time. Upon returning from her maternity leave in May, 1938, she requested permission to take the physical examination. This was approved May 11, 1938, and she was examined on May 16, 1938, and found overweight. Thereafter on May 26, 1938, the Board of Examiners determined that the overweight condition should not be a bar, and following the filing of her vaccination certificate on July 7, 1938, the Board of Examiners granted her a license as Teacher of Swimming in day schools on August 1, 1938.

On September 27, 1938, the Board of Examiners forwarded to the Board of Superintendents an eligible list containing the name of the petitioner with a final rating 93.17%, which reflected credit for her prior teaching, stating that the license was issued to her as of June 8, 1936, the date of the original eligible list. Her name was thereupon added as a supplement to the original eligible list, following the name of the person last appointed from that list. The petitioner received the next (except for one male) appointment, effective March 1, 1939.

Effective August 31, 1941, the number of teachers of swimming was reduced to fifty. Although the petitioner had secured a rating on the eligible list which would have entitled her to be among the first fifty had she successfully completed her physical examination in due time, she and all others were laid off and had their names placed on a preferred eligible list. The respondent measured her seniority from March 1, 1939, the date of her regular appointment as a Teacher of Swimming on an annual salary basis. This was in accordance with the respondent's practice of determining seniority from the date of a teacher's regular appointment on a per annum salary basis and commencement of service thereunder. Petitioner disputes the legality of this method of computing seniority and claims that her seniority should be computed from her commencement of service as a teacher under appointment or assignment from an eligible list. even though such service was rendered on a per diem salary basis.

The principal issue to be determined, therefore, is whether the petitioner's seniority in the school system is to be measured from December 10, 1925, when she commenced her services as a per diem swimming teacher, or from March 1, 1939, when she commenced her services under a regular appointment as a per annum salaried swimming teacher.

At the time of petitioner's appointment to her permanent position (March 1, 1939), section 881 of the Education Law contained no specific provision as to the *order of suspension* of

teachers whose positions a board of education has abolished; the incumbent of the particular position abolished was simply placed on a preferred eligible list. There was a specific provision, however, for the *order of reinstatement* of a teacher thus suspended in subdivision 3 of said section, which so far as material reads as follows: " 3. If an office or position is abolished * * *, the person filling such position at the time of its abolishment * * * shall be placed upon a preferred eligible list of candidates for appointment to a vacancy that then exists or that may thereafter occur in an office or position similar to the one which such person filled without reduction in salary or increment * * *. The persons on such preferred list shall be reinstated or appointed to such corresponding or similar positions *in the order of their length of service in the system.*" (Emphasis supplied.) (As amd. by L. 1934, ch. 141.) In 1940 the Legislature added subdivision 2-a to said section 881 (L. 1940, ch. 754, eff. April 25, 1940), which reads as follows: " 2-a. Whenever a board of education abolishes a position under this chapter, the services of the teacher having the *least seniority in the system within the tenure of the position abolished* shall be discontinued." (Emphasis supplied.)

The determination of the issue here presented turns upon the construction of the italicized words in the foregoing statute. The discontinuance of the services of the petitioner would be justified under subdivision 2-a if she had " the least seniority in the system within the tenure of the position abolished ". Her reinstatement would be required if her " length of service in the system " exceeded that of any person reinstated before her. Seniority in the system within the tenure of the position abolished is measured by the " length of service in the system." The precise issue thus presented is whether " length of service in the system " embraces petitioner's per diem service.

Petitioner maintains that all service must be included, whether on a per diem basis without tenure or on a per annum salaried basis with tenure. Respondent, on the other hand, urges that " service in the system " must " be deemed to refer not to any type of service, but only to regular service "; that the Board of Education has always divided teaching into regular and non-regular positions; that regular positions are those which are held by regular employees, while all others are deemed nonregular positions; that a regular employee is one serving on an annual salary and who is required to become a member of the Teachers' Retirement System, and that these terms, long recognized, were incorporated in section 868-a of the Education Law.

While there appears to have been no judicial interpretation of section 881 of the Education Law thus far, our appellate courts have passed upon a statute *in pari materia,* namely, section 31 of the Civil Service Law, which relates to " Civil service employees separated from or demoted in the service of the state or civil division thereof ". This statute requires suspension, in the event of the abolishment of a position in the civil service, to be " in the inverse order of original appointment in the service " and the reinstatement, from the preferred list upon which the names of persons thus suspended must be entered, to be made " in the order of their original appointment ".

The Court of Appeals construed said section 31 in *Koso* v. *Greene* (260 N. Y. 491). In that case plaintiff received, on January 12, 1931, a permanent appointment as an architectural designer in the Department of Public Works of New York State from an eligible list under the civil service. He was suspended May 5, 1932, by reason of lack of appropriations for that Department. Other architectural designers who received provisional or temporary appointments prior to the plaintiff's permanent appointment, but whose permanent appointments were subsequent to his, had been retained in the employment of the Department. In sustaining the plaintiff's application for reinstatement, the court construed section 31 to mean that when civil service employees are to be suspended, the beginning of their service is the day upon which their appointment was originally made " from an eligible list for a probationary term ripening at the end of three months' satisfactory service into a permanent appointment," and that the time served as a provisional or temporary appointee is not to be considered. It was there urged, as here, that the original appointment in the service means the first, the initial appointment, but this contention was overruled. In the course of its opinion, the court said (p. 495): " Permanent appointments are made without reference to whether the appointee is holding a temporary or provisional appointment to the same position, or how long such appointment has lasted. These appointments are mere stop-gaps, exceptions of necessity to the general rules with re pect to the filling of such positions, and are in no sense probationary. While such appointments may on occasion be succeeded by a permanent appointment, this may only be by virtue of examination and eligibility under the civil service laws, and not by reason of any ripening of the temporary or provisional appointment into a permanent appointment." (See, also,

*Matter of Hilsenrad* v. *Miller,* 284 N. Y. 445; *Matter of Stehle* v. *McGoldrick,* 285 N. Y. 543; *Matter of McCann* v. *Kern,* 262 App. Div. 109, affd. 287 N. Y. 581; *Matter of Siegel* v. *Board of Education of the City of N. Y.,* 171 Misc. 348, affd. 257 App. Div. 821, leave to appeal denied 281 N. Y. 887.)

I see no essential difference between the effect of the language used in section 881 of the Education Law and in section 31 of the Civil Service Law. " Service ", as used in the former statute, must commence with an appointment. There can be but one *original* appointment. " Length of service " would thus commence from the original appointment. Therefore, both statutes, though differently worded, mean the same, and the judicial construction of section 31 of the Civil Service Law would apply with equal force to section 881 of the Education Law. When so applied, one is compelled to conclude that petitioner's service and seniority date from her regular appointment on March 1, 1939, as in the *Koso* case (*supra*).

There is nothing inequitable in this result, for when appointed, petitioner had been given full credit for her prior service in her examination and by reason thereof secured a comparatively high rating; she was also given a salary credit for prior experience; she also had the benefit of a lesser probation period. (Education Law, § 872, subd. 1.) To give her additional seniority credit now would give to a temporary employee an advantage over a permanent employee which the Legislature could never have intended. Prior to her regular appointment, she was not a regular employee; she " filled in " provisionally in a position not regularly licensed. While a Teacher of Swimming in Vacation Playground and Evening Recreation Centers or Teacher of Swimming in Community Centers and Playgrounds, she was licensed for one year only, and required a renewal each year; new eligible lists were promulgated annually; she was paid on a per diem or per session basis for the days on which she actually served, without any compensation for holiday or vacation periods; she was not entitled to a regular annual salary, nor to tenure, nor to membership in the Retirement System, nor to pension and other rights accorded to regular employees in the school system. Her employment was merely temporary in nature, and not of the character of a " probationary term ripening * * * into a permanent appointment." There is no claim here that petitioner's per diem appointment ripened into a permanent appointment.

I have not lost sight of petitioner's contention that her per diem service was in fact continuous for over ten years. This

is not borne out by the record, for an analysis of her service shows that she worked five days per week for less than one half that period, and for the remaining period she was either on leave or worked only three days per week. However, the fact that this temporary service was frequent or infrequent, and was continued from year to year, does not make it permanent. As was said in *Matter of Hilsenrad* v. *Miller* (*supra*, p. 451): " Our conclusion is that the fact that by a succession of extensions the petitioner was continued in his position * * * after the expiration of the statutory term for a temporary appointment, did not serve to invest him with rights, including tenure, which the law attaches to the status of permanent civil service employment."

Moreover, it is not clear how she could obtain, on June 4, 1936, a *two*-year maternity leave, when, according to the record, her per diem service ended on April 30, 1936, and she merely held a temporary *one*-year appointment that, it is fair to assume, expired that very June. It would appear that her service record was broken and constituted a termination of her relations. (*Matter of Doering* v. *Hinrichs*, 289 N. Y. 29; *Matter of Marcus* v. *Ingersoll*, 266 N. Y. 359; *Matter of Abrams* v. *Ryan*, 244 App. Div. 284.)

Petitioner further urges that, in any event, respondent should have appointed her as a regular teacher on an annual salary on June 25, 1936, when other per diem swimming teachers in service on April 1, 1936, were appointed. She concedes that it is now too late to demand such appointment, but asks the court to base her seniority as of at least June 25, 1936. There is no merit whatever in this contention. A physical examination was a necessary prerequisite to an appointment whether as teacher of swimming or as shower instructor. Petitioner unnecessarily chose to delay it for two years. She did not finally comply until July 7, 1938. In the meantime, rights and privileges had accrued to appointees who had completed their probationary term and received permanent tenure and retirement rights. Under these circumstances the effective date of petitioner's regular appointment must control in determining her seniority.

The respondent has not dealt unfairly with petitioner. She joined in an appeal to the Commissioner of Education against the abolition of her position, as a result of which an agreement was made in November, 1941, providing for the re-employment of petitioner and others on the preferred eligible list under the title of Instructor in Showers and the payment of twenty-one days' salary in full for all claims; petitioner accepted said

re-employment and twenty-one days' salary and retained her place on the preferred list for Teacher of Swimming; all of which took place following her protest of September 22, 1941.

The foregoing views render it unnecessary to discuss the defenses in respondent's answer and particularly so in view of the fact that its counsel concludes his brief with the statement " we would like to have the decision based on the main points in the case involving seniority. We therefore do not labor the remaining defenses."

Accordingly the application is denied.