M. Henry Marxuscerlo, J.
Petitioner in this article 78 proceeding challenges his dismissal as a substitute teacher and the cancellation of his substitute license, and seeks an order directing his reinstatement to the teaching position he formerly held and also reinstatement of his license.
Petitioner, an honorably discharged war veteran, was employed in October, 1962 at Junior High School 44, Borough of Manhattan, as a per diem substitute teacher of mathematics under a substitute license duly issued to him by the Superintendent of Schools. While thus employed, he refused to participate in school shelter drills. The State Civil Defense Commission, as authorized by the New York State Defense Emergency Act (L. 1951, ch. 784, as amd. by L. 1961, ch. 84) had directed that “ during the school year 1962-1963 not less than three (3) shelter drills shall be held in each school building.” This directive was approved by the State Commissioner of Education in a memorandum dated August 27, 1962 and sent to all Superintendents of Schools. Pursuant to said directives and during the Cuban crisis, respondent Donovan, as acting Superintendent of Schools, issued on October 24, 1962, a special circular addressed to all principals of public schools, wherein he ordered them, in view of the international situation then prevailing, to hold before November 1, 1962 two shelter drills and a staff conference to discuss individual and group responsibilities relative to civil defense procedures. In accordance with said instructions, Miss *746 Burns, the principal of Junior High School 44, called a conference of the entire faculty for October 29 and scheduled shelter drills for October 30 and 31. Petitioner refused to attend the faculty conference held on October 29, and on the following day delivered to the principal a letter which read as follows:
Oct. 30, 1962
Dear Miss Burns,
My knowledge of the threat of nuclear weapons to the survival of the whole human race commits me in full conscience to oppose all orders handed down by the government authorities which contribute to the illusion that war with nuclear weapons can be justified. I will oppose the spread of this falsehood in every way I can.
Particularly, I will not cooperate in any way in the “ shelter drills ” authorized by the Department of Civil Defense, since they are a direct gesture supporting our nation’s willingness to use or threaten to use nuclear weapons.
James T. Council
Although petitioner had been advised by Principal Burns that he had obligations to the children and that shelter drills were mandated by the Commissioner of Education and Civil Defense authorities, he nevertheless refused to participate in the shelter drills held on October 30 and 31, thereby making it necessary on both occasions for another staff member to assume petitioner’s responsibility of taking his pupils to their assigned shelter area in the school.
Petitioner’s employment in the school did not continue beyond October 31, 1962. On that date, however, Principal Burns referred him to respondent Josephine O’Brien, acting Associate Superintendent of Schools in charge of personnel, who interviewed him on November 9, 1962 about his refusal to participate in the afore-mentioned drills. At that interview, which was also attended by his attorney who now represents him in the instant proceeding, petitioner was advised that it was administratively impossible to .exempt him from shelter drills participation; and that schools were required by law to conduct such drills and that he was responsible for the safety and welfare of his class; and that if he refused to participate in such drills the aforesaid Associate Superintendent would recommend to the Superintendent of Schools the cancellation of petitioner’s substitute license. At the conclusion of the interview, petitioner stated that he would not take part in the shelter drills; and on said November 9 respondent Donovan, as acting Superintendent of Schools, *747 revoked petitioner’s substitute license upon the recommendation of respondent O’Brien.
Thereafter, petitioner appealed to respondent Donovan for the reinstatement of his license and requested a hearing in connection therewith. This request was granted and an informal hearing was held on November 30, 1962. At that hearing, petitioner, represented by his present attorney, requested permission to call experts as witnesses in support of his position. Respondent Donovan denied this request and thereupon urged petitioner to reconsider his refusal to participate in shelter drills, assuring him that no attempt was being made to interfere with his personal beliefs or his conscientious objection to nuclear warfare; and, moreover, advised petitioner that if he would participate in said drills his license would be reinstated. Notwithstanding the advice and assurances thus given, petitioner would not yield on his refusal to participate in practice drills, although he did state that in the event of an actual attack he would lead his pupils to the designated shelter area in the school, and reinstatement of his license was accordingly denied.
Petitioner bases his demand for the relief sought upon the following grounds:
(1) That as a veteran he could not be dismissed as a substitute teacher, nor have his license cancelled, without being accorded a hearing upon due notice of stated charges as required by section 75 of the Civil Service Law.
(2) That the order to conduct shelter drills in its application to him was coercive of his preparing for nuclear war contrary to the demands of his conscience, and therefore impinged upon his freedom of conscience guaranteed by the First and Fourteenth Amendments of the United States Constitution.
(3) That the cancellation of his license was arbitrary and unreasonable inasmuch as shelter drills are a hoax and a farce, especially since the schools not only have no actual shelters, but even with such shelters the chances of surviving a nuclear attack are nil, as he was prepared to show by experts whom he sought to call as witnesses, but was denied the right to do so.
(4) That his refusal to participate in shelter drills on grounds of conscience did not constitute such an offense as to warrant as severe and harsh a penalty as the loss of his license and the right to teach in public schools.
Section 310 of the Education Law provides that a person conceiving himself aggrieved in consequence of any official act may appeal to the Commissioner of Education who is authorized to examine and decide same. Petitioner did not exercise this right of appeal and respondents therefore contend that he may not *748 maintain the instant proceeding unless he first exhausts the administrative remedy for redress thus made available to him. This contention must fail. Where it is claimed, as is the case here, that the educational authorities have refused to accord a proper hearing, or that they have acted arbitrarily or in violation of legal rights of the person aggrieved, the latter will not be denied recourse to the courts simply because he did not avail himself of his right to appeal to the Commissioner of Education. (Matter of O’Connor v. Emerson, 196 App. Div. 807, affd. 232 N. Y. 561; Matter of McCarthy v. Board of Educ. of City of N. Y., 106 Misc. 193, revd. on other grounds 188 App. Div. 930; Matter of Citron v. O’Shea, 244 App. Div. 158.)
While his right to maintain this proceeding is unassailable, petitioner nevertheless is not entitled to the relief he seeks upon any of the grounds urged in support thereof.
■Section 2554 of the Education Law defines the powers and duties of the Board of Education as follows: “ 13. To prescribe such regulations and by-laws as may be necessary to make effectual the provisions of this chapter and for the conduct of the proceedings of said board and the transaction of its business affairs, for the general management, operation, control, maintenance and discipline of the schools, and of all other educational, social or recreational activities and other interests under its charge or direction.”
Section 224 of the Board of Education By-laws defines a substitute license as follows: 11 Substitute license means a license issued by the superintendent of schools upon the recommendation of the board of examiners and pursuant to which license the holder thereof may serve temporarily, in the field covered by said license except as otherwise provided.” And section 242 of those by-laws prescribes the term of substitute licenses and reads as follows: * ‘ Substitute licenses shall be issued by the superintendent of schools, subject to termination at any time by the superintendent of schools.”
Petitioner acquired no tenure through his employment as a substitute teacher, but only the right to serve temporarily and for such days as the Board of Education made available to him for employment in that capacity. (Cf. Matter of Lee v. Board of Educ. of City of N. Y., 182 Misc. 1011, 1017, affd. 269 App. Div. 747, affd. 295 N. Y. 647.) Concededly, he was dismissed from his teaching position without a hearing; and for aught that appears in the record herein said dismissal took place on November 9, 1962 when his license was cancelled by the acting Superintendent of Schools.
*749 Respondent Donovan, as acting Superintendent of Schools, had the right to terminate petitioner’s license and thus effect his dismissal as a substitute teacher without according him a hearing upon stated charges, unless otherwise restricted by law. A substitute teacher is not entitled to a hearing under any provision of the Education Law or by-laws of the Board of Education (Matter of Scribner, 74 N. Y. St. Dept. Rep. 98), nor under section 75 of the Civil Service Law. Nor do the requirements of due process mandate a formal hearing for a substitute teacher. (Cf. Bailey v. Richardson, 182 F. 2d 46, affd. 341 U. S. 918.)
Section 75 of the Civil Service Law, invoked by petitioner in support of his alleged right to a formal hearing, deals with removal or disciplinary acts and provides in subdivision 1 thereof that a person described in paragraph (a) or paragraph (b) of said subdivision shall not be removed or otherwise subjected to any disciplinary penalty except for incompetency or misconduct shown after a hearing upon due notice of stated charges. Paragraph (a) refers to a person holding a position in the “ competitive class of the classified civil service” and paragraph (b) to a veteran holding a position “ in the classified service.” Article III of the Civil Service Law deals with the division of the civil service into the classified and unclassified service. The unclassified service is defined in section 35 and includes: “ (g) all persons employed by any title whatsoever as members of the teaching and supervisory staff of a school district”. The classified service is, by section 40, declared to comprise all offices and positions not included in the unclassified service. Since a substitute teacher is expressly included in the unclassified service, it follows that the restriction on the removal of veterans from the classified service does not apply to petitioner’s position in the unclassified service. (See Matter of Byrnes v. Windels, 265 N. Y. 403, 405; Matter of Bemis v. Board of Educ. of Union Free School Dist. No. 1 of Town of German Flats, 258 App. Div. 935; Matter of Lee v. Moore, 32 Misc 2d 114.)
Not being entitled to a hearing, petitioner cannot challenge the termination of his services on any ground since no legal right of his was thereby violated. His license, to be sure, did not invest him with the right of having the Board of Education employ him, but only afforded him an expectancy of such employment as and when same was made available to him, terminable nevertheless at the will of the board. (Cf. Matter of Bomar v. Cole, 177 Misc. 740.) On the other hand, he may challenge the cancellation of his license on a ground other than the failure to accord him a hearing. The expectancy of employment afforded by his license *750 is an interest which the law will protect against invasion by acts themselves wrongful, such as the denial of a constitutional right. (Bomar v. Keyes, 162 F. 2d 136.)
Thus his license could not be cancelled because of his race, religion or scruples against nuclear warfare. (United Public Workers v. Mitchell, 330 U. S. 75, 100; Takahashi v. Fish Comm., 334 U. S. 410; cf. Matter of Wolf v. Conway, 276 App. Div. 798; see, also, Matter of Epstein v. Board of Educ. of City of N. Y., 162 Misc. 718, 720.)
Petitioner, however, does not claim that his license was can-celled for any of the above reasons, but that such cancellation penalized him for his conduct sanctioned by his conscience and thus impinged upon his freedom of conscience guaranteed by the First Amendment.
Not every act, which in some of its manifestations interferes with the exercise of any of the liberties protected by the First Amendment, is open to constitutional objection. Said amendment embraces two concepts — freedom to believe and freedom to act. The first is absolute, but in the nature of things the second is not. Conduct remains subject to regulation for the protection of society.
Accordingly, while one may think and believe as he will without interference, conduct resulting from the exercise of said right is not safeguarded by the First Amendment if it violates a reasonable nondiscriminatory regulation by governmental authority which has as its purpose the promotion of public good and safety. (Reynolds v. United States, 98 U. S. 145; Davis v. Beason, 133 U. S. 333; Cantwell v. Connecticut, 310 U. S. 296; Cox v. New Hampshire, 312 U. S. 569.)
As the papers herein clearly indicate, respondent Donovan cancelled the license in question solely because petitioner refused to participate, as he was required to, in shelter drills ordered by civil defense and school authorities; and his cancellation thereof will not be invalidated simply because petitioner found drill participation to be incompatible with his conscience. The drills were ordered pursuant to the New York State Defense Emergency Act, which is a valid exercise of legislative power; and under the authority thereof petitioner could constitutionally be required to participate in the afore-mentioned drills, notwithstanding his scruples against nuclear warfare, since drills are purely a defensive measure and not coercive of preparation for nuclear war against such scruples. (People v. Peck, 7 N Y 2d 76, cert. den. 364 U. S. 662.)
Nor may petitioner attack the drills as being unreasonable and arbitrary because they are ineffective or of no value as a *751 defensive measure against nuclear warfare. It is the function of the Legislature, and not of the court, tó determine the value or effectiveness of said drills. (Jacobson v. Massachusetts, 197 U. S. 11.)
Similarly, he may not challenge the drills as being unreasonable or arbitrary in their application to him on the ground that the circumstances of his position were favorable to granting him an exemption therefrom. Again, the court is powerless to rewrite the requirements of the Defense Emergency Act by providing exemption for those who for reasons of conscience do not wish to comply therewith. (Hamilton v. Regents, 293 U. S. 245; see Otten v. Baltimore & Ohio R. R. Co., 205 F. 2d 58.)
Since petitioner willfully and intentionally refused to discharge a lawful and reasonable service duty imposed upon him, such conduct on his part, even though sanctioned by his conscience, constituted insubordination affecting his fitness and ability to carry out the responsibilities entailed by his employment as a substitute teacher, which in turn affected his fitness to hold a license entitling him to be employed in that capacity. Authorized to act upon said insubordination and to take such action thereon as his discretion dictated, respondent Donovan determined that petitioner’s misconduct warranted cancellation of his license.
Petitioner, on the other hand, takes the position that his conduct under all the circumstances was not such an offense as to warrant the loss of his license.
Subdivision 5-a, of section 1296 of the Civil Practice Act (CPLB, § 7803, subd. 3) empowers the court to determine “ Whether the respondent abused his discretion in imposing the measure of punishment or penalty or discipline involved in the determination.” Reasonably construed, said statute authorizes the court to set aside a determination by an administrative agency “ only if the measure of punishment or discipline imposed is so disproportionate to the offense, in the light of all the circumstances, as to be shocldng to one’s sense of fairness ”. (Matter of Stolz v. Board of Regents, 4 A D 2d 361, 364.)
The cancellation of the license with the accompanying loss of the right to teach and thus earn a living is indeed a harsh penalty; but in this case it is harsh only because petitioner wants it to be so, by his adamant attitude towards discharging a duty lawfully required of him. Respondent 0 ’Brien had advised petitioner that unless he participated in shelter drills, his license would be cancelled. Nevertheless, he would not yield on the position he had taken. After his license was terminated respondent Donovan assured him that if he would participate in the drills *752 Ms license would be reinstated. Again he refused to yield. On both of said occasions he insisted upon being granted exemption from the performance of said duty. Petitioner had no right to be employed in the public school system on his own terms, but only upon reasonable terms laid down by the school authorities. (Adler v. Board of Educ., 342 U. S. 485, 492.)
A substitute license is required to qualify for temporary employment in a public school, but otherwise is not needed for such employment in other educational institutions. If the license in question was a requisite for part-time employment in a school other than a public school, then there might be merit to petitioner’s claim that the loss of his license was excessive punishment, since the cancellation would bar him from employment in such other school even if such other school might be willing to employ him upon such conditions as would accommodate the demands of his conscience.
Accordingly, the court finds that respondent Donovan did not abuse the discretion vested in him in taking the action that he did. Belief on the ground that the determination was excessive punishment, if obtainable, must come from the Commissioner of Education, who has final authority in passing upon questions arising in the administration of the school system. (Cf. Matter of Board of Educ. of City of N. Y. v. Allen, 6 N Y 2d 127; see, also, Matter of Epstein v. Board of Educ. of City of N. Y., 162 Misc. 718, supra.) Petition is dismissed.