E. T. Scoville et al.

v.

James E. Miller et al.

Charles S. Musson

v.

Same.

*Contracts—Excavation and Grading—Balance Due—Recovery of—Sub-contractors—Garnishment—Evidence—Interest—Former Adjudication.*

1. In actions brought by sub-contractors to recover for work done in excavating and grading the road bed of a railway under contracts with the defendants, the principal contractors with the railway company, the controversy between the parties having reference chiefly to the amounts of the different kinds of excavation done under the contracts and allowed by the engineer of the work, it having been agreed that the measurements and calculations of said engineer and his assistants as to the quantities and amounts of the several kinds of work performed under the contract should be conclusive upon the parties, this court holds that said engineer, in determining the amount of the work done, proceeded in accordance with requirements of the contract.

2. In such case there can be no recovery under the *indebitatus* assumpsit counts of an amount greater than that ascertained to be due under the contract involved.

3. In the case presented, this court holds as erroneous the charging of the salary of a servant of the defendants against certain plaintiffs, and the refusal to allow interest on the amounts due under the contracts to the plaintiffs in each case, and that the judgments for the defendants can not stand.

[Opinion filed March 13, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. EGBERT JAMIESON, Judge, presiding.

Messrs. MILLER, STARR & LEMAN, for appellants.

Mr. A. M. PENCE, for appellees.

MORAN, P. J.    The appeals in these cases were heard together in this court, on the same set of abstracts and briefs. The principal contentions are in each case the same, the contracts upon which the questions arise being in essential provisions identical.    The actions were brought by the appellants, plaintiffs below, to recover for certain work done by them as sub-contractors in excavating and grading the road bed of the Santa Fe railway under contracts with the defendants, who were principal contractors with the said railway company.

The controversy between the parties has reference chiefly to the amount of the different kinds of excavation done under the contracts and allowed by the engineer of the work.    The contention of appellants is, that the engineer in determining the amount of work done, did not proceed in accordance with the requirements of the contract, and that he allowed to the appellants very much less than they were in fact entitled to have.    The contract fixed a certain price per cubic foot for earth work excavation, a higher price for loose rock, and a still higher price for solid rock excavation.

The specifications, which are made a part of the contract, declare, " There shall be no classification of material of any kind other than earth, loose and solid rock, as provided for in these specifications;" and they provide, "Loose rock shall comprise:

"First.    Shale or soapstone, lying in its original or stratified position, coarse boulders in gravel, cemented gravel, hard-pan or any other material requiring the use of pick and bar, or which can not be plowed with a strong ten-inch grading plow, well handled behind a good six mule or horse team.

"Second.    Detached rocks or boulders in masses exceeding one and a half cubic feet, and less than one cubic yard."

Scoville v. Miller.

The contract contained the following provision regarding the ascertaining and determining of the amount of work done under it :

" Second. The work shall be executed under the direction and supervision of the chief engineer of said railway company and his assistants, by whose measurements and calculations the quantities and amounts of the several kinds of work performed under this contract shall be determined, and whose determination shall be conclusive upon the parties; and who shall have full power to reject or condemn all work or materials which in his or their opinion do not fully conform to the spirit of this agreement; and said chief engineer shall decide every question which can or may arise between the parties relative to the execution thereof, and his decision shall be binding and final upon both parties. And, whereas, the classification of excavation provided for in the annexed specifications is of a character that makes it necessary that special attention should be called to it, it is expressly agreed by the parties to this contract, that the determination, by the measurements and calculations of the said engineer, of the respective quantities of such excavation, shall be final and conclusive."

The engineer delivered estimates of the amount of the different kinds of work done, and the evidence showed that in arriving at the quantities of the different kinds of excavations, the cuts were measured to ascertain the total contents, and then certain percentages of the contents were called loose rock, and a certain percentage earth. This method of calculating the respective quantities of the different material was made necessary in the opinion of the engineer, by the variation of the material found in the cuts. There was but a portion homogeneous. There were sand pockets, and a continual change from hard to soft, and from soft to hard material, so that in some places the plow would run easily, and then upon the same level and in running the same furrow would strike material so hard that it would break out in chunks and could scarcely be plowed out at all. The material was all mixed up, and in classifying it, the engineers

took into consideration what was called the force account, made by keeping watch of teams at work and the hardness of the material, and the amount of work accomplished, and allowed percentage of the different material by the exercise of their judgments upon their experience, knowledge and observation of these various facts.

Appellants contend that this was not an estimate such as the contract required, and that the only determination of the engineer which could be binding, is one when, by actual measurement, the quantity of each kind of material should be ascertained. The argument is, that the only calculations which the engineer was to make, were mere mathematical processes to ascertain the bulk of a given material excavated, from actual measurements made.

This is not, in our opinion, a correct construction of the clause of the contract above set out, making the engineer's determination conclusive upon the parties. The "measurement" of an embankment or a cut includes the arithmetical calculation which will give the cubic contents, and if the engineer was to be confined to such calculations, then the word "calculations" in the connection in which it is used is tautological and unnecessary. The word as used in this clause of the contract, is to be understood in the sense of estimate, and the engineer was, after the measurement was ascertained by him, to determine by reference to the known contents and other *data*, the quantity of the different materials excavated. For instance, in the classification, hard pan as hard pan, pure and simple, is not to be called loose rock, but such material called hard pan, or any other material which should require the use of pick and bar, or which could not be plowed with a strong ten inch grading plow, well handled, behind a good six mule team. Now it is very manifest that where hard pan was struck, in order to know whether it was to be classed as loose rock or not, the engineer must know whether it requires the use of pick and bar, or that it could not be removed with a ten inch plow and six mule team. What is hard pan is not defined in the contract, and it is apparent from the evidence in this case, that even those who claim to be experts do not

agree as to what it is.   The classification of the material and the calculation of the quantities involved something more than the ordinary arithmetical process of multiplying the length, width and depth together, and in view of this known difficulty of classification, and the opportunity for differences and dispute that would arise with regard to it, the parties deem it "necessary that special attention should be called to it," for the purpose of expressly agreeing by the parties to the contract that "the determination, by the measurement and calculations of the said engineer, of the respective quantities of such excavation, shall be final and conclusive."   It would seem by this language the parties intended to render controversy as to the correctness of the engineer's determination idle, and to bind themselves to submit to and abide by his conclusions.   That such is the effect of the contract, where the engineer proceeds according to it, and in the absence of any allegation that in reaching his determination he acted fraudulently, has been repeatedly determined by the courts of last resort in this, as well as in other States.   In our opinion, the engineer did in this case proceed according to the terms and true meaning and intent of the contract.

It is not contended that he was guilty of fraud in making his determination.   Counsel argue that the plaintiff had a right to recover under the *indebitatus* assumpsit counts, the value of the work done according to the contract price, ignoring the engineer's determination, as he did not proceed according to the contract.   True, he might recover under an *indebitatus* count, but when in the course of his evidence it appears that the work was done under a special contract, which remains in full force, and which ascertains the price, or provides for the ascertainment of it, he can only recover the price as ascertained under the contract.   He can not compel the payment of the amount claimed, unless he produced to the court the kind of evidence required by the contract. Here the engineer's certificate is a condition precedent to his recovery, and is the agreed evidence of the amount he is entitled to.   He must be bound by it, or avoid by it, showing fraud.   Mistake he can not show at law.

The engineer was not the servant or agent of the appellees. He was indifferent as between the parties to these contracts. While both parties must have known that he might err, that his judgment might be at fault, they elected to put themselves beyond the peril of disputes, by making his determination of the matters here in controversy, final as between them. There is no claim that he did not act in good faith and in the exercise of an honest judgment.

As said by the Supreme Court in Sewell v. Brown, 71 Ill. 133, this is " their own contract, voluntarily entered into, and they can not evade or disregard it, unless for fraud clearly proved."

It would not be profitable for us to enter upon the work of distinguishing the many cases cited by counsel for appellant in support of their contention that they had a right to disregard the engineer's certificate, and to prove by other witnesses the amount of the different materials excavated by them. The rule, as we have stated it, is settled in actions at law in this State, as shown by the numerous cases cited by counsel for both parties to this appeal. The court below was right in excluding the evidence offered by appellants, and their principal contention on this appeal must be denied.

There are errors, however, which are relied on by appellants, and which entitle them to a reversal of the judgments below.

First. The court took the amount stated by one of the appellees as the amount due the appellants, Scoville, Warkley and Melville. It appears from the cross-examination of the witness, that in arriving at the amount due them, he charged against them an item of $666.65 for salary of superintendent E. Miller. The clear preponderance of the evidence as it appears in this record, is that said Miller was the employe of appellees, and that he never worked for said appellants, and that they never agreed to pay him. We can not see that appellants should be charged with the salary which appellees paid to him.

Second. The amount, whatever it was, due to the appellants in each of the cases, was money due on an instrument in

writing, and would draw interest from ten days after the engineer certified that the contract was completed, until it was paid. What was paid to the attaching creditors of Scoville et al. under the garnishee judgment, is to be treated as the payment of so much at the date it was paid, and the balance due said Scoville et al., would draw interest till judgment is rendered in this action. Appellant Musson was, under this rule, entitled to interest on the amount due him, from ten days after the rendering of the final certificate.

The final estimates put in evidence carry out the price of the different work at the rate fixed in the contract between appellees and the railway company, instead of at the rate fixed between appellants and appellees. There is a considerable percentage of difference in the two rates. Neither counsel has taken the trouble to figure out what the sum due to each of the appellants would be at the rate agreed upon in their contracts. Independent of the item wrongfully charged to Scoville et al., we think on a rough estimate that the amount allowed to them is not enough, and it seems very clear that the amount allowed to Musson by the court, is too little. We decline to enter upon close figuring upon these matters in these cases. If counsel have not time to figure out the true amount accurately, the matter may be turned over for computation to the clerk of the trial court.

The judgment in the garnishee proceeding is no bar to this action by Scoville et al. Such judgment is not conclusive as to the amount of the debt. Black on Judgments, Sec. 594, and cases cited.

For the error in charging up the Miller salary against Scoville et al., and refusing to allow interest on the amount due under the contract to plaintiffs in each case, and so that the true amount due according to their contracts upon the engineer's certificate of the amount of work, may be accurately ascertained, the judgments will be reversed and the cases remanded.

*Reversed and remanded.*