STATE, ex rel BRADFORD, Appellee v. BOARD OF EDUCA-
TION OF THE READING CITY SCHOOL DISTRICT, et al.,
Appellants.

Court of Appeals, First District, Hamilton County.

No. 6476. Decided February 19, 1945.

J. W. Brown, Cincinnati, for appellee.
Chester S. Durr, Cincinnati, for appellants.

## OPINION

By HILDEBRANT, P. J.

A writ of mandamus, together with a mandatory injunc-
tion was awarded by the trial court. The notice of appeal
recites that it is taken on law and fact.

Examination of the petition reveals the primary relief
prayed for to be by way of mandamus, heretofore held in The
State, ex rel. Carson, et al. v Board of Education of Stock
Township, Harrison County, 115 Oh St., 55, not to constitute
a chancery case within the purview of Art. IV, Section 6 of the
Ohio Constitution. State ex rel. Curran v Brookes, 142 Oh St.,
107. The Supreme Court of Ohio has heretofore held that
plaintiff's primary demand set out in the pleadings governs
the character of the appeal; its most recent pronouncement
being the case of Borton v Earhart, 144 Oh St., 334, (Ohio Bar,
January 15, 1945) which contains citations of earlier decisions.

This appeal is, therefore, reduced to an appeal on questions of law and considered as such.

In his petition, relator prays that a writ of mandamus issue commanding respondents to enter into a contract employing him as a teacher for the school year 1944-45, at the same salary received during the past school year, plus any increment provided by the salary schedule of repondent Board.

A further prayer for mandatory injunction requiring respondents to correct records of their proceedings at meetings, alleged to have been held March 19, 1944, and June 5, 1944, is included in the petition.

The pertinent events in chronological order are:—Relator, a former teacher in the Lima, Ohio, schools, was first employed on a one year limited contract by respondents for the school year 1943-44; as early as December, 1943 he made several general criticisms of the school and its conduct by those responsible for it to different members of the Board; at the regular meeting of February 7, 1944, the Board resolved not to employ relator for the coming school year, 1944-45, and instructed the Secretary to notify him of such action prior to March 31, 1945, the last date fixed by law on which such notice of intention not to employ shall be given, and, accordingly, the Secretary sent such notice to relator, who admits receiving it on or before March 15, 1944; at the beginning of the fourth period on the morning of March 16, 1944, all but one of relator's mathematics class of eight or nine pupils left the class room; the upper six grades, with the exception of fifteen or twenty pupils left their class rooms and congregated outside the building, calling out, "We want Bradford;" relator spoke to the rebellious students ostensibly to urge them to return to their class rooms, but states that he actually told them to go to their homes and have their parents come to the school in an effort to settle the problem; a group of parents assembled at the school that afternoon and again that night of Thursday, March 16, 1944; as a result of those gatherings, two of their number were delegated to request the use of the school property for a mass meeting of parents, pupils, and persons interested for Sunday afternoon, March 19, 1944, and to request the members of the school board to attend such meeting; accordingly, on Saturday afternoon, March 18, 1944, the committee of two called at the home of the Board President, who granted the request for use of the school for said meeting and accepted the invitation to attend for himself and extended the invitation to

all other board members; some five or six hundred persons assembled at the school Sunday afternoon, March 19, 1944, including all members of the board and the Superintendent of Schools, who sat in a group on the stage of the meeting room; respondent clerk of the board did not attend. The Committee members who had requested the meeting were seated around a table in the center of the auditorium, where from time to time during the afternoon others, including relator, joined them. On inquiry, the president of the Board indicated the members were ready to hear what was offered from those in charge and a committeeman assumed to call the meeting to order and to preside; three objectives in the form of demands contained in a signed petition were set forth as representing the desires of those represented by the committee. They were:— (1) Dismissal of the Superintendent; (2) Employment of Bradford for the ensuing 1944-45 school years; and, (3) The return of the rebellious pupils to the school without discipline or penalty. The meeting was disorderly to say the least and was attended with cat calls, booing, unrestrained babel of voices, all talking at once, and a certain milling about of those present.

In response to the request for an expression from the members of the Board on their attitude on the second demand to employ Bradford for the school year 1944-45, the witness Schriever, called by relator, testified that the president of the Board expressed the sentiment of himself and the members in these words: "We will take action to this extent: If the children go back to school, we will reinstate Mr. Bradford." On request, all members of the Board indicated their concurrence in that sentiment by rising from their seats to be counted; all board members state they agreed to take official action, reemploying Bradford if the pupils returned to school Monday morning, March 20, 1944; the pupils did not return to school until Wednesday morning, March 22, 1944. Thereafter, the Board treated the matter in the light of their condition not having been complied with, the notice to Bradford not being rescinded, no further notice was necessary, and none was given.

At the regular meeting of the Board on June 5, 1944, the Superintendent, as required by law, submitted a list of names for employment as teachers under the type contract to which they were entitled. Relator's name was not on that list. The names were read by the Board President, and a motion duly made and passed to employ the persons recommended

by the Superintendent. Relator at this meeting contended that he was entitled to a continuing contract, and his evidence submitted was filed with the school officials. His credentials, however, revealed on their face that his contention was in error.

Relator's position is grounded on a contention that certain of the events set forth above did not take place and his own construction and interpretation of other admitted happenings.

He contends the Board at its meeting of February 7, 1944, did not have presented to it the motion directing notice of intention not to reemploy, but that discussion, if any, of that subject, was confined to the informal meeting in private, usually held before the regular public meeting and the minutes later made to show the action as taken at the regular official meeting, and that those minutes were not read at the next regular meeting in March, 1944; he further contends the action of the Board members in attending the meeting of parents, pupils, and others interested on Sunday, March 19, 1944, admittedly called, as set forth above, and in standing to give public assent to their willingness to reemploy relator, amounted to official, binding action so to do. He denies the existence of the condition as to the return of the pupils to the school on Monday was involved, or that the necessity of future action to rescind the notice not to reemploy was necessary. He produced witnesses who testified to attending the meeting of February 7, 1944, and that they did not hear the motion and vote to give notice to relator that he was not to be reemployed, nor did they hear such action included in the minutes read at the subsequent March meeting. Witnesses testified the Board President read the name Bradford in reading the Superintendent's list at the June 5th meeting, and that the Board voted to rescind the notice and to rehire relator on the occasion of the assembly of March 19, 1944.

It will be seen that decision of this case turns largely on questions of fact.

The extraordinary remedy of mandamus is provided by §12,283 GC, and is defined as follows:

"Mandamus is a writ issued, in the name of the state, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station."

It is elementary, requiring no citation, that the discretion of public boards and officers, while they may be compelled to act, cannot be controlled by mandamus.

There was no duty resting on the Board here to reemploy relator, or any other first year, limited contract teacher, but it was solely and peculiarly within its discretion so to do or not to do.

Relator received the notice of intention not to reemploy within the time fixed by §4842-8 GC, and an examination of the events of March 19, 1944, fails to reveal any substantial evidence that such notice was ever rescinded. It is clear that the Board was not assembled in regular or special meeting and none of the requisite formalities of such meeting or of official action were present. No convening of the Board took place. No motions, votes, or record of board proceedings were had; and respondents all testified none was intended. While, as individuals, the members assented to take future action on the happening of a certain condition, when that condition was not met, they all testify and the record of the Board shows no action was ever taken or intended to be taken. Relator, not having a legal right to a continuing contract, in addition, had notice that the Board, in its lawful discretion, had decided not to tender another contract of any kind. Mandamus will not lie to control that discretion, so exercised. **25 O Jur., sec. 28, p. 1003; State, ex rel. Masters, v Beamer, 109 Oh St., 133.**

In view of the above, extended discussion of other contentions is unnecessary. The character of relator's evidence with reference to the meeting of February 7th, that the witness didn't hear something, and again with reference to the June 5 meeting, they heard relator's name read, is insufficient in the face of the record of the proceedings and the positive testimony of all respondents as to their acts and intentions, and the fact as shown by the record that relator's name is not on the list and the motion being directed to the list supplied by the Superintendent not to any list of names read at the meeting, to outweigh respondents' evidence.

The judgment will be reversed and final judgment entered in this court for respondents.


HILDEBRANT, P. J., MATTHEWS & ROSS, J. J., concur in Syllabus & Opinion.