**Ray Elbert PARKER**

v.

**BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY, MARYLAND.**

Civ. No. 15402.

United States District Court
D. Maryland.

Jan. 11, 1965.

Robert H. Reiter, Andrew P. Zimmer, and David B. Isbell, Washington, D. C., and Fred E. Weisgal, Baltimore, Md., for plaintiff.

Paul M. Nussbaum, Hyattsville, Md., for defendant.

Thomas B. Finan, Atty. Gen. of Maryland, and Mathias J. DeVito, Asst. Atty. Gen., Baltimore, Md., for State Board of Education.

Walter S. Levin, F. Duncan Cornell, and Sauerwein, Benson & Boyd, Baltimore, Md., for Maryland State Teachers' Assn., Inc.

Prince George's County Teachers' Assn., Inc., amici curiae.

THOMSEN, Chief Judge.

Plaintiff, formerly a probationary teacher in a public school in Prince George's County, Maryland, filed the present suit against the County Board of

Education [1] alleging "dismissal" and "termination" of his contract in violation of claimed constitutional rights under the First, Fifth and Fourteenth Amendments, and seeking a judgment in the nature of an injunction requiring that he be "reinstated" in his position, that he be granted a hearing on the "charges" against him, that defendant's records be "corrected", etc., and for $100,000 damages, plus counsel fees.

In fact, plaintiff was not dismissed from his position; his contract was not renewed at the end of the school year, pursuant to a provision therein which permitted the Board to terminate the contract at the end of the first or second school year, i. e. before plaintiff acquired tenure, by written notice during June or July.

The County Board first filed a motion to dismiss the complaint, which was later withdrawn and replaced by an answer and a motion for summary judgment on its Third Defense, that the teachers' contract by which plaintiff was employed permitted the County Board lawfully to terminate plaintiff's employment at the conclusion of the first contract year with or without cause, and without the necessity of any hearing, and denied that any constitutional rights had been violated; and on its Fourth Defense, which alleged that under the Public Education Law of Maryland the State Board of Education has sole jurisdiction to determine any factual question relating to the refusal of defendant to renew plaintiff's contract.

The parties have agreed that certain letters and other documents which have been filed may be considered in ruling on the motion.

The State Board of Education, the Maryland State Teachers' Association, Inc., and the Prince George's County Teachers' Association, Inc., have been granted leave to participate as amici curiae, and have argued in support of defendant's motion for summary judgment.

*Facts*

The following facts are alleged in the complaint or appear from other papers before the Court:

On June 1, 1962, plaintiff was employed by the County Board as a teacher of psychology at the Northwestern Senior High School, effective August 28, 1962. The contract which he signed is in the usual form used in the counties of Maryland both for probationary teachers and teachers with tenure. It included the following relevant provisions:

"AND IT IS FURTHER AGREED that either of the parties to this contract may terminate it at the end of the first or second year by giving thirty days' notice in writing to the other during the month of June or July.

"* * *

"This contract shall continue from year to year, subject to the aforegoing conditions, provided that if the teacher, on the recommendation of the County Superintendent, is suspended by the County Board of Education in accordance with the provisions of Sections 64 and 102 of Article 77 of the Annotated Code of Maryland, 1957 Edition, said teacher shall have the right of appeal to the State Superintendent of Schools, if the decision of said board is not unanimous."

The complaint alleges that on or about March 15, 1963, plaintiff was called to the office of the principal of his school and told that a complaint had been made "as to his assigning the book entitled *Brave New World* by Aldous Huxley to his class, as assertedly atheistic, obscene, and immoral, and that a demand had been made that the plaintiff and the book be removed from the school".

It appears from one of the documents filed by plaintiff that *Brave New World* was included among a long list of books called "Student Reading List" in the

---

1. The State of Maryland was originally joined as a co-defendant, but at the hearing it was conceded that it was not a proper party to the suit.

"Curriculum Guide in Social Studies, Psychology", issued by the County Board to its psychology teachers. The following caution appears at the top of the list:

"It is essential in a psychology class that great care be taken in making book assignments. The nature of the content in this course makes it imperative for you as teacher to know both the book and the student before you make such an assignment. You must consider the maturity of the student as well as the mores in your school community in assigning material to be read. If you have not read the book, do not assign it to your students."

It further appears that the complaint with respect to the book had been made by the father of a girl in plaintiff's class.

The complaint alleges that on or about March 26 plaintiff was again called to the office of the principal and "advised that based on the complaints made relating to the entitled book mentioned above, his contract would be terminated at the end of the school year and not renewed. Plaintiff requested from defendant Board a statement of charges and a hearing for the purpose of being confronted by the evidence against him and being accorded an opportunity to rebut those charges, but received no response thereto." The complaint does not specifically allege what was done with respect to terminating the contract, but the letters filed by plaintiff in connection with the motion for summary judgment show that the situation was somewhat different from that alleged in the complaint, and that the termination of the contract was strictly in accordance with the provisions quoted above permitting either party to terminate the contract after the first or second year. On April 18, plaintiff's attorney wrote George H. Robinson, Assistant Superintendent of the Prince George's County Schools, claiming that his client's civil rights would be violated by the proposed termination and that the representations of the "third parties" who had complained to the principal, Reed, were defamatory. On April 29, Robinson replied that there had been no termination of the contract, but that in discussing the matter with plaintiff, he had advised plaintiff "that an assignment for the next school term is uncertain at the present time. Although the Board of Education is not required by law to notify teachers of this probability until June or July, I felt it might give Mr. Parker additional time to make his plans." He sent the attorney a copy of the contract.

The actual termination of the contract was by official action of the Board of Education taken at its meeting on July 2, 1963. Robinson informed Parker of this by a letter, set out below.[2]

Plaintiff thereupon brought an action in this Court for defamation against Martin E. Whipps, the father who had complained.[3]

2. "Mr. Ray Parker
1704 Abingdon Drive
Alexandria, Virginia

"Dear Mr. Parker:
"This is to notify you of official action of the Board of Education of Prince George's County taken at their meeting 2 July 1963 regarding the termination of your contract effective with the close of the 1962–63 school term. This action was taken in accordance with paragraph 4 of your Teacher's Contract which states:

"'And it is further agreed that either of the parties to this contract may terminate it at the end of the first or second school year by giving 30 days notice in writing to the other during the month of June or July.'
"Sincerely yours,
"(s) George H. Robinson
"Assistant Superintendent"

3. Plaintiff's deposition in that case states a different ground for the dismissal, namely that "Mr. Robinson told me in Mr. Reed's presence, that he was dismissing me for lack of judgment and lack of emotional maturity based on the facts Mr. Reed read to me," which is in line with the position taken by defendant herein in the first and second defense. On this motion for summary judgment, however, the Court cannot consider either the first or second defense or that deposition.

Finally, plaintiff alleges that he has had difficulty obtaining employment as a teacher since July 1963.

## Jurisdiction

Plaintiff claims jurisdiction under 28 U.S.C.A. § 1332 (diversity), § 1331 (federal question, under the First, Fifth and Fourteenth Amendments), § 1343 (civil rights), § 2201 (declaratory judgment) and 42 U.S.C.A. § 1983 (civil action for deprivation of rights). Diversity is alleged, and although questioned, is conceded for the purposes of this motion.

Although jurisdiction under some of the sections relied on is doubtful for various reasons (e. g. under 42 U.S.C. § 1983, since defendant is sued as a body politic, Maryland Code, Art. 77, sec. 50, Monroe v. Pape, 365 U.S. 167, 187, 191 n. 50, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)), it exists under 28 U.S.C.A. 1343(3), if the allegations are not frivolous. Bell v. Hood, 327 U.S. 678, 66 S. Ct. 773, 90 L.Ed. 939 (1946).

### A. The Maryland Law

The Public School Law of Maryland, Art. 77 of the Maryland Code (1957 ed.), provides that the county boards of education shall appoint all teachers (sec. 64), and that their "tenure * * * shall be determined by the county board of education" (sec. 159). Pursuant to this direction, and to a By-law of the State Board (By-law 14), the several county boards have adopted a uniform teachers' contract, which contains the provisions quoted above under the heading *Facts*. Sec. 64 specifies the circumstances under which an assistant teacher may be suspended or dismissed, namely for "immorality, misconduct in office, insubordination, incompetency, or wilful neglect of duty". Sec. 102 specifies similar circumstances under which teachers may be suspended or their certificates revoked. In connection with any dismissal or suspension for cause under these sections,

the teacher is given the right to a hearing, and to an appeal to the State Superintendent.

Thus, teachers who have served more than two years in the school system have a right to a continuous tenure, from which they may be removed only for cause under the provisions of secs. 64 and 102. The first two years of their employment, however, are probationary only. Their contracts may be terminated at the end of either one of the probationary years with or without cause, and without a hearing. Dismissal or suspension of a probationary teacher *during the term* of either the first or second year, however, like a dismissal or suspension after tenure has been achieved, can only be for cause, after a hearing (if requested), pursuant to the provisions of secs. 64 and 102. This view is supported by County Board of Education for Washington County v. Cearfoss, 165 Md. 178, 187, 166 A. 732 (1933).

The standard teachers' contract, which permits termination without cause at the end of the first and second contract years, does not violate secs. 64 and 102. Sec. 159 specifically permits the county boards to fix the tenure of teachers. The word "dismiss" in statutes such as secs. 64 and 102 refers only to a discharge during a contract year, and not to a termination of the contract at the end of a probationary year under the terms of the agreement itself.[4]

In the present case plaintiff was employed by the County Board under a standard teachers' contract dated August 28, 1962; pursuant to the provisions of that contract, on July 2, 1963 (at the end of the first year), he was given notice that the contract was terminated. Since he was a first year probationary teacher, the County Board did all that was necessary under the law to terminate their agreement, without regard to the reason for the termination.

---

4. See Magenheim v. Board of Education, Mo.App., 347 S.W.2d 409 (1961); Tishock v. Tohickon Valley Joint School Board, 181 Pa.Super. 278, 124 A.2d 148 (1956); 47 Am.Jur., Schools, sec. 125; 78 C.J.S. Schools and School Districts § 197.

Almost every case which has considered the question supports the view that, unless there is a statute to the contrary, probationary teachers' contracts may be terminated by the school authorities at the end of any contract year prior to the time tenure is gained, with or without cause and without a hearing.[5]

In Zimmerman v. Board of Education of Newark, 38 N.J. 65, 183 A.2d 25, 29 (1962), the Court said:

"Inherent in the tenure legislation is the policy that a board's duty to hire teachers requires more than merely appointing licensed instructors; it demands that permanent appointments be made only if the teachers are found suitable for the positions after a qualifying trial period. In essence this constitutes a 'proving out' period. In another context, we said in Cammarata v. Essex County Park Comm'n, 26 N.J. 404, 412, 140 A.2d 397, 401 (1958):

" 'It is difficult to evaluate the character, industry, personality, and responsibility of an applicant from his performance on a written examination or through cursory personal interviews. Knowledge and intelligence do not alone [suffice] * *. The crucial test of his fitness is how he fares on the job from day to day when suddenly confronted by situations demanding a breadth of resources and diplomacy. Many intangible qualities must be taken into account, and, since the lack of them

may not constitute good cause for dismissal under a tenure statute, the [employer] * * * is entitled to a period of preliminary scrutiny, during which the protection of tenure does not apply, in order that it may make pragmatically informed and unrestricted decisions as to an applicant's suitability.'

"The same thoughtful philosophy applies with manifold emphasis to the selection of school teachers."

### B.  The County Board's Action Infringed No Constitutional Rights

Plaintiff's primary contention is that the County Board's action was in violation of his constitutional rights. Particularly he argues: (1) that the County Board denied him due process of law by terminating his employment without giving him the benefit of a hearing; and (2) that the termination denied him the right of free speech guaranteed by the First Amendment.

As a general proposition no person has a constitutional right to public employment, either as a school teacher or in any other type of occupation. The Constitution does place certain limitations, however, on the grounds upon which a public employee can properly be dismissed or such employment refused. It cannot be refused on account of race, color, creed, national origin, membership in a political party or other such dis-

---

5. See Council v. Donovan, 40 Misc.2d 744, 244 N.Y.S.2d 199 (1963); Grace v. Board of Education of City of New York, 32 Misc.2d 983, 224 N.Y.S.2d 857 (1962); People ex rel. Thomas v. Board of Education of City of Chicago, 40 Ill.App. 237, 188 N.E.2d 237 (1963); People ex rel. Fursman v. City of Chicago, 278 Ill. 318, 116 N.E. 158 (1917); Zimmerman v. Board of Education of Newark, 38 N.J. 65, 183 A.2d 25 (1962), cert. den. 371 U.S. 956, 83 S.Ct. 508, 9 L.Ed.2d 502 (1963); Ahrensfield v. State Board, 126 N.J.L. 543, 19 A.2d 656 (1941); Brooks v. School District of Moberly, Mo., 8 Cir., 267 F.2d 733, 739 (1959), cert. den.

361 U.S. 894, 80 S.Ct. 196, 4 L.Ed.2d 151 (1959); Rees v. Murray City Board of Education, 6 Utah 2d 196, 310 P.2d 387 (1957); Johnson v. Wert, 225 Ark. 91, 279 S.W.2d 274 (1955); Tucker v. San Francisco Unified School Dist., 111 Cal.App.2d 875, 245 P.2d 597 (1952); Whittington v. Barbour County Board of Education, 250 Ala. 692, 36 So.2d 83 (1948); State ex rel. Bradford v. Board of Education, 75 Ohio App. 282, 61 N.E. 2d 916 (1945), aff'd 145 Ohio St. 561, 62 N.E.2d 252 (1945); Bourne v. Board of Education of City of Roswell, 46 N.M. 310, 128 P.2d 733 (1942).

criminatory ground.[6] Nor can an employee be dismissed because of the prior exercise of a constitutionally protected right, such as the invocation of the Fifth Amendment or the refusal to take unreasonable loyalty oaths.[7]

### (1) The Failure to Grant a Hearing Was Not a Denial of Due Process.

■ Plaintiff's complaint alleges that he requested a hearing prior to the termination of his contract, and that the failure of the school authorities to grant it denied him due process of law. The County Board denies that such a request was made, but assuming plaintiff's allegations to be true, there was no denial of a constitutional right.

■ Generally, in the absence of statute or unreasonable discrimination, a public employee may be summarily discharged from government service, without the necessity of a hearing, and such action does not amount to a denial of due process of law. Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637 (1956).

The only restriction that the Supreme Court has placed upon this rule is that a State cannot constitutionally prohibit a person from pursuing a career (as opposed to a particular job) without the benefit of a hearing. Thus, in Willner v. Committee on Character, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963), the Court held that the petitioner, a law graduate, was denied due process when he was refused admission to the Bar without a hearing. The Court explicitly recognized the validity of the contrary rule, however, where only the right to work in a particular job was involved (p. 103, n. 2, 83 S.Ct. 1175). See Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

In the instant case the termination of plaintiff's contract denied him only the right to work in the public schools of one of the counties in Maryland. It did not destroy his legal right to pursue his profession elsewhere in the State, or in any other state, or even in a private school in Prince George's County.

It is true, of course, that any dismissal or termination of employment by an employer for personal reasons limits to some extent the opportunity of the employee to obtain other employment, because some prospective employers may prefer employees whose services have never been terminated by their previous employers. But that does not give a probationary teacher the constitutional right to a hearing before the County Board on termination of his contract in accordance with its terms. Any other rule would impose unreasonable burdens upon the members of the School Boards and would weaken the whole concept of tenure, which the Teachers' Associations are anxious to preserve. It is not disputed that plaintiff in this case was given an opportunity to present his side to his educational superiors. No more should be required.

If, as plaintiff alleges, his contract was terminated because he assigned *Brave New World* to his class, this fact would not prevent his obtaining employment elsewhere. Defendant alleges that plaintiff's contract was terminated because his

6. United Public Workers of America v. Mitchell, 330 U.S. 75, 100, 67 S.Ct. 556, 91 L.Ed. 754 (1946); Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed. 2d 982 (1961).

7. Slochower v. Board of Education, 350 U. S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Zimmerman v. Board of Education of Newark, supra; cf. Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952), with Garner v. Board of Public Works of City of Los Angeles, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317 (1951), and Adler v. Board of Education, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 (1952). See also Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

approach to the teaching of psychology and his method of handling students were not suitable for instruction at the senior high school level, and because he was unwilling to adhere to the procedures established in the public school system, an instance of which was his insistence upon assigning the book as required reading rather than as suggested or optional reading. If this is true, it would probably make it more difficult for plaintiff to obtain employment in certain schools, but would not prevent his practicing his profession. In either event, the Board was acting within its rights and its responsibilities in following the recommendations of its staff. "Fitness for teaching depends on a broad range of factors." Beilan v. Board of Public Education, 357 U.S. 399, at 406, 78 S.Ct. 1317, at 1322, 1 L.Ed.2d 913.

Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), upon which plaintiff relies, is not in point. That case was not decided upon constitutional grounds,[8] but upon the ground that the Department of Defense did not have the statutory authority to revoke the petitioner's security clearance in the manner it did. In the instant case, the Public School Law of Maryland and the teachers' contract authorized the County Board's action. Moreover, the action of the Defense Department in Greene involved more than the right to one job; it involved the petitioner's right to pursue his profession in electronics.

### (2) Free Speech

The factual allegations contained in the complaint, and in plaintiff's affidavit, show no denial of freedom of speech. It is claimed that plaintiff's contract was terminated because a complaint had been received about his assigning and teaching from the book *Brave New World*, and that the book was thereafter removed from the library. There is no allegation that plaintiff's personal right to free expression was in any way inhibited by the school authorities.

Even if such allegations were present, they would afford no ground for the relief sought in this case. The right of free speech or expression, like other First Amendment guarantees, is not absolute. Where the abridgement of the abstract right of free speech results from government action taken for the protection of other substantial public rights, no constitutional deprivation will be found to exist, American Communications Ass'n., CIO v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950). No unconstitutionality results where the right of free speech is reasonably curtailed as a prerequisite to continued government employment. Ibid, at p. 398; United Public Workers of America v. Mitchell, 330 U.S. 75, 95, 67 S.Ct. 556 (1947); Opinion of the Justices, 332 Mass. 785, 127 N.E.2d 663 (1955).

The Supreme Court has upheld the Hatch Act, United Public Workers of America v. Mitchell, supra; see also Washington v. Clark, D.D.C., 84 F.Supp. 964 (1949), aff'd Washington v. McGrath, 86 U.S.App.D.C. 343, 182 F.2d 375 (1950), aff'd 341 U.S. 923, 71 S.Ct. 795, 95 L.Ed. 1356 (1952). The Supreme Court has ruled that a teacher may be dismissed by the school authorities, without infringement of his constitutional guarantees, because he refused to answer his superintendent's questions about his loyalty. Beilan v. Board of Public Education, 357 U.S. 399, 77 S.Ct. 1047 (1958). A school system has the constitutional right to require school teachers, as a prerequisite to their continued employment, to adhere to such requirements as those contained in the caution at the head of the reading list.

Plaintiff cites no case which supports his First Amendment claims. Sweezy v. New Hampshire, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957),

8. See Cafeteria and Restaurant Workers Union Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 890, 81 S.Ct. 1743 (1964).

**230**

involved the legality of a contempt citation entered against a teacher for refusing to answer questions to a state agency not connected with the school system. It did not involve freedom of expression in the classroom. Garner v. Board of Public Works of City of Los Angeles, 341 U.S. 716, 71 S.Ct. 909 (1951), Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215 (1952), Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637 (1956), Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247 (1960), and Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460, (1958), dealt with entirely different situations. The termination of plaintiff's employment did not result in a deprivation of his right to free speech.

Defendant is entitled to summary judgment in its favor under its Third Defense.

### C. Jurisdiction of State Board

Both the Court of Appeals of Maryland and this Court have pointed out that certain questions with respect to teachers' contracts are within the exclusive jurisdiction of the State Board of Education. See secs. 21 and 22 of Art. 77 of the Maryland Code (1957 ed.); Board of Education v. Cearfoss, 165 Md. 178, 187, 166 A. 732 (1933); Wilson v. Board of Education, 234 Md. 561, 200 A.2d 67 (1964); Underwood v. Board of County School Com'rs, 103 Md. 181, 63 A. 221 (1906); Zantzinger v. Manning, 123 Md. 169, 90 A. 839 (1914); Robinson v. Board of Education of St. Mary's County, D.Md., 143 F.Supp. 481 (1956); and Pettit v. Board of Education of Harford County, D.Md., 184 F.Supp. 452 (1960). But cf. McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963).

However, since this Court has concluded that defendant is entitled to a summary judgment under its Third Defense, it is not necessary to pass on defendant's Fourth Defense.

Judgment will be entered dismissing the complaint.