**Robert J. KEEFE, Plaintiff,**

v.

**George J. GEANAKOS et al., Defendants.**

Civ. A. No. 69–1093.

United States District Court
D. Massachusetts.

Nov. 6, 1969.

Philip A. Mason, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for plaintiff.

A. Kenneth Carey, Peabody, Mass., Terrance F. Perkins, Ipswich, Mass., for defendants.

## OPINION

CAFFREY, District Judge.

This is a civil action brought pursuant to the provisions of the Civil Rights Act, 42 U.S.C.A. § 1983. Jurisdiction of this court is based on 28 U.S.C.A. § 1343(3)(4). Plaintiff Robert J. Keefe is a citizen of Massachusetts and is employed as an "English Coordinator" at Ipswich High School, a public school. The defendants are the seven individual members of the Ipswich School Committee, the Superintendent of Schools, and the Principal of Ipswich High School. Plaintiff has been employed as a public school teacher in the Ipswich school system from the academic year 1966–67 to date. He was granted tenure in April of 1969, pursuant to Mass.G.L., ch. 71, sec. 41. He seeks preliminary and permanent injunctive relief and money damages for an allegedly wrongful suspension and threatened dismissal from his employment as a member of the Ipswich school system.

Plaintiff was informed on September 4, 1969 by Joseph R. Rogers, Principal of Ipswich High School, that there would be a meeting at 9:00 a. m. that morning between plaintiff, Superintendent of Schools John H. Stella, and Mr. Rogers, in which plaintiff would be called upon to defend his use of certain language on the opening day of classes for the current school year. The meeting was held. On or about September 9, 1969, he was requested to meet with Messrs. Rogers and Stella, at which time Mr. Stella recommended to plaintiff that he resign from the school system and plaintiff declined to do so.

On October 8, 1969 plaintiff received a written notice from Mr. Stella to the effect that pursuant to the provisions of Mass.G.L., ch. 71, sec. 42D, a meeting

to be held at 9:00 p. m. on October 15 of the Ipswich School Committee was relative to a thirty-day suspension of plaintiff from his position as a teacher "for unbecoming conduct and other good causes." This notice advised plaintiff that he was entitled to "a written charge or charges of the cause or causes for which the suspension is proposed, and also to a hearing before the School Committee at which you may be represented by counsel, present evidence, and call witnesses to testify in your behalf and to examine them and to cross-examine other witnesses." Also on October 8, plaintiff received a second written notice from Supt. Stella that in accordance with Chapter 71, Sec. 42 as amended, a hearing of the School Committee scheduled for November 7, 1969 would consider "your dismissal from your post as a teacher and department coordinator in the Ipswich Public School system for unbecoming conduct and other good causes." This notice advised plaintiff of the same rights as those recited in the first notice described on the preceding page hereof.

A third document dated October 8, 1969, was sent to Mr. Keefe by Supt. Stella advising him that he was suspended forthwith for a period of seven days "for unbecoming conduct and other good causes."

In response to a letter from counsel for plaintiff dated October 9, a letter dated October 10 was sent by Supt. Stella to counsel for plaintiff containing the following:

"The charge or charges of the cause or causes for which the dismissal as a teacher and Department Coordinator in the Ipswich Public School system is proposed are as follows:

1. Conduct unbecoming a teacher and department coordinator.
2. Conducting a study project which would tend to undermine public confidence and react unfavorably upon the public school system of Ipswich. This project was conducted in May 1969 and involved allowing students to build an outhouse at the high school as symbolic of the irrelevance of public schools' course work, time schedules, and regulations.
3. Use of offensive material in the classroom on September 3, 1969, and subsequently, which use would undermine public confidence and react unfavorably upon the public school system of Ipswich. This material was contained in an article entitled, 'Notes on a New History, Part 1: The Old and the Young,' by Robert Jay Lifton, in the September issue of the Atlantic magazine. This article contained a discussion of the word 'mother * * *,' which word was used by Mr. Keefe in his discussion of the article before students in his English classes.
4. Failure to agree to the request of the School Committee to refrain from using, in his classroom, the offensive language referred to in Charge # 3, during the School Committee meeting of September 4, 1969.
5. Insubordination on October 20, 1969, consisting of the refusal to obey a direct order of the Superintendent of Schools through the Principal of the High School not to teach a class but to remain in his office."

■ The matter came before this Court for hearing on plaintiff's application for preliminary injunctive relief and was briefed and argued by the parties. Prior to obtaining a preliminary injunction a plaintiff must satisfy two requirements to show himself entitled thereto. It is well-established, in this Circuit and elsewhere, that prior to deciding whether or not to issue temporary injunctive relief a district court "necessarily has to determine whether if the temporary injunction is denied the

injury to the plaintiff will be certain and irreparable." Celebrity, Inc. v. Trina, Inc., 264 F.2d 956, at 958 (1 Cir. 1959); Ohio Oil Co. v. Conway, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972 (1929). The second requirement which must be met by a plaintiff in order to qualify for injunctive relief is a showing "that there is a reasonable probability that (he) will ultimately prevail in the litigation." Cuneo Press of New England Inc. v. Watson, 293 F.Supp. 112 (D.Mass.1968).

 In the light of the well-reasoned opinion of Chief Judge Roszel C. Thomsen, in Parker v. Bd. of Education, 237 F.Supp. 222 (D.Md.1965), aff'd. 348 F.2d 464 (4 Cir. 1965), cert. denied 382 U.S. 1030, 86 S.Ct. 653, 15 L.Ed.2d 543 (1966), a case strikingly similar on its facts to the instant case, in that it too involved a high school teacher challenging his dismissal from employment in a public school system because of his assigning "Brave New World" to his class as an infringement on his claimed First Amendment right of free speech, and in further light of the ruling in *Parker* to the effect (p. 229) that

> "The right of free speech or expression, like other First Amendment guarantees, is not absolute. Where the abridgement of the abstract right of free speech results from government action taken for the protection of other substantial public rights, no constitutional deprivation will be found to exist, * * *. No unconstitutionality results where the right of free speech is reasonably curtailed as a prerequisite to continued government employment. * * * Opinion of Justices, 332 Mass. 785, 127 N.E.2d 663."

it cannot be ruled that there is a probability that plaintiff will succeed on the merits of this case. To the same effect, see Developments in the Law— Academic Freedom, 81 Harv.L.Rev., 1045, 1053, "Some measure of public regulation of classroom speech is inherent in every provision of public educa-

tion." See, also, Faxon v. School Committee of Boston, 331 Mass. 531, 120 N.E.2d 772, 44 A.L.R.2d 781.

A second difficulty with plaintiff's position is that there has been no showing herein of irreparable harm, for the reason that if plaintiff were ultimately to prevail monetary damages would appear to be an adequate remedy at law.

For the foregoing reasons the petition for temporary injunction is denied.

Order accordingly.