## MICHAEL P. DE BLEECKER *v.* MONTGOMERY COUNTY, MARYLAND ET AL.

[No. 1043, September Term, 1980.]

*Decided April 13, 1981.*

The cause was argued before GILBERT, C. J., and MELVIN and COUCH, JJ.

*Gary Howard Simpson* for appellant.

*Hugh E. Donovan,* with whom were *Donovan & Nash* on the brief, for appellees Montgomery County, Blake and Sander. *Edward B. Layne, Jr.,* for appellees Montgomery County Board of Education and Norma C. Day.

GILBERT, C. J., delivered the opinion of the Court.

This is a unique appeal in this Court because it is the first case appearing before us that is bottomed on the federal statute permitting civil actions for alleged deprivation of constitutional or statutory rights.

The federal statute upon which the instant appeal was built is 42 U.S.C. §§ 1983 and 1985. Section 1983 provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Section 1985 (3) provides:

> "If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an

elector for President or Vice-President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

Historically, cases arising under federal statutes have been heard and decided exclusively by the federal court system. The State's courts generally have been strangers to such causes. Civil rights deprivation suits have, to a degree, changed the focus from exclusively federal to State and federal.

Justice Brandeis, writing for a unanimous Court in *McKnett v. St. Louis & San Francisco Railway Co.,* 292 U.S. 230, 54 S. Ct. 690, 78 L. Ed. 1227 (1934) observed:

"The power of a State to determine the limits of the jurisdiction of its courts and the character of the controversies which shall be heard in them is, of course, subject to the restrictions imposed by the Federal Constitution. . . .

While Congress has not attempted to compel states to provide courts for the enforcement of the Federal Employers' Liability Act, *Douglas v. New York, N.H. & H.R. Co.,* 279 U.S. 377, 387 [49 S. Ct. 355, 356, 73 L. Ed. 747, 752 (1929)], the Federal Constitution prohibits state courts of general jurisdiction from refusing to do so solely because the suit is brought under a federal law. . . . A state may not discriminate against rights arising under

federal laws." *Id.* at 233-34, 54 S. Ct. at 691, 78 L. Ed. at 1229.

Professor Charles Alan Wright, in his *Handbook of the Law of Federal Courts* (3d ed. 1976) ch. 8, § 45, states that unless the Congress has conferred exclusive jurisdiction in federal courts, the State courts have concurrent jurisdiction even though the action "is entirely based on a federal claim." *Id.* at 193.

Although it has been clear for many years that State courts could hear federal claims, it was not at all pellucid that they were required to do so. The question, Professor Wright notes, was "finally resolved in the Second Employers' Liability Cases [223 U.S. 1, 32 S. Ct. 169, 56 L. Ed. 327 (1912)],[1] where it was held that claims arising under the Federal Employers' Liability Act could be enforced, as of right, in the courts of the states if their jurisdiction, as prescribed by local laws, was adequate to the occasion." *Id.*

"The Supreme Court," however, "has not as yet considered whether Congress can require state courts to entertain federal claims where there is no analogous state-created right enforceable in the state courts." *Id.* at 195. Nevertheless, a number of decisions of less august courts have concluded that the State and federal courts have concurrent jurisdiction with respect to the entertainment of civil rights actions brought pursuant to 42 U.S.C. § 1983. *See Perry v. Apache Junction Elementary School District,* 20 Ariz. App. 561, 514 P.2d 514 (1973); *Williams v. Horvath,* 16 Cal. 3d 834, 129 Cal. Rptr. 453, 548 P.2d 1125 (1976); *Alberty v. Daniel,* 25 Ill. App. 3d 291, 323 N.E.2d 110 (1974); *Kish v. Wright,* 562 P.2d 625 (Utah 1977); *Terry v. Kolski,* 78 Wisc. 2d 475, 254 N.W.2d 704 (1977); *Bennun v. Board of Governors of Rutgers State University,* 413 F. Supp. 1274 (D.C.N.J. 1976). *But see Chamberlain v. Brown,* 223 Tenn. 25, 442 S.W.2d 248 (1969). This was held to be equally applicable to cases arising under 42 U.S.C. § 1985. *Vason v.*

---

1. "These cases are also frequently cited under the name Mondou v. New York, N.H. & H.R.C." *Handbook of the Law of Federal Courts, supra,* p. 193, n. 5.

*Carrano,* 31 Conn. Sup. 338, 330 A.2d 98 (1974); *Luker v. Nelson,* 341 F. Supp. 111 (N.D. Ill. 1972); *Bennun v. Board of Governors of Rutgers State University, supra.*

The jurisdiction of the Circuit Court for Montgomery County was never an issue in the case. We have set out the statute and the discussion relative to concurrent jurisdiction in order that the reader understand why and how a claim based solely on a federal statute was litigated in a State court rather than in a federal court. We align ourselves with the above-cited cases and hold that Maryland courts have jurisdiction to try actions based upon 42 U.S.C. §§ 1983 and 1985. We turn now to the instant appeal.

The appellant, Michael P. De Bleecker was hired by the Montgomery County Board of Education (Board) in June 1973 as a part-time, temporary employee for the specific purpose of teaching the inmates in the Montgomery County Detention Center [2] (Center). By the terms of his employment he was neither tenured nor was he hired for a specific time period. De Bleecker's job was to continue "until such time as the program on which he was working terminated."

De Bleecker had begun teaching one of the inmates on Friday morning of July 22, 1977, when there was "some slamming and . . . unusual noise which indicated there was a fight" in the immediate area. De Bleecker "called the guards" and then "ran up toward the place where the fight took place." He saw one of the inmates, Antonio Thomas, in a cell, lying "on the floor beside the bunk." The fight was over when De Bleecker arrived. He helped Thomas out of the cell, and while the two of them were heading toward the school dorm, Sergeant Barricklow, a correctional officer, "came running up the steps and . . . grabbed Thomas." Barricklow, with the assistance of two other guards, forced Thomas into a cell. De Bleecker testified that he "could not see anything because the door" while half open, shielded

---

2. The Board contracts yearly with the Montgomery County Department of Corrections (Corrections) to provide adult education services to the inmates. De Bleecker was under contract with the County Board of Education, *not* with Corrections.

"the bunk" from view. De Bleecker said, however, that he heard sounds of "slamming and . . . struggling." He went into the cell in order to help, but he was sent away by the officers. When the guards brought Thomas out of the cell, De Bleecker observed that Thomas's "head was swollen up, and . . . [there were] some blood stains."

De Bleecker returned to the classroom where some inmates were discussing the incident. De Bleecker expressed to them his disapproval of Sergeant Barricklow's behavior. He recommended to his audience that they be "sincere, honest, . . . and not to be afraid of telling the truth" during any investigation. Later that day, De Bleecker submitted a written report of the incident to the Center officials.

Three days later, when De Bleecker reported for work at the Center, he was called into a meeting with Gary Blake, Director of the Center. Blake told De Bleecker that he, Blake, would investigate the matter, and he suggested that De Bleecker take the day off because the guards would deny De Bleecker access to the Center.

As a result of his investigation, Gary Blake, on August 1, 1977, sent a letter to the Board. The Blake letter stated that, "Mr. De Bleecker acted in an irresponsible and emotional manner." It further declared that De Bleecker's discussion with the inmates concerning Sergeant Barricklow's "violent behavior" constituted "a serious security violation." Blake concluded that Corrections had determined that "De Bleecker's services . . . [were] no longer desired or permitted at the . . . Center." The following day, De Bleecker received his official termination notice from the Board.

De Bleecker filed suit in the circuit court against Montgomery County, the Board, Gary Blake, and Norma C. Day, Director of the Department of Adult Education.[3] The complaint alleged there was conspiracy to deprive and a deprivation of De Bleecker's civil rights. De Bleecker averred that he was denied a due process right to pre- and

---

3. De Bleecker subsequently filed an amendment to his complaint. He added Larry E. Sander, the former Director of Corrections, as a defendant.

post-termination hearings, and a violation of his First Amendment right of free speech.

At the close of De Bleecker's evidence, Judge John F. McAuliffe granted the motions of the several defendants for directed verdicts in their favor on all counts.

Judge McAuliffe ruled that "as a pure matter of contract law and employer/employee law, [De Bleecker] was not entitled to a pretermination hearing." He observed that "[t]here was no contention made that [De Bleecker] was under a specific term of employment." It was conceded that De Bleecker was a temporary employee, terminable at will.

The judge further ruled that because of the difficulty in maintaining order and a high level of discipline in any penal institution, De Bleecker's comments to the inmates were not constitutionally protected speech and conduct under the circumstances. Judge McAuliffe opined that De Bleecker's "subsequent discharge grounded upon that conduct [was] not a violation of any constitutional right. . . ."

Lastly, the trial court held "as a matter of law" that Messrs. Blake and Sander "acted in good faith in taking the action that they did," based upon their investigation of the incident.

De Bleecker argues on appeal that "the trial court erroneously granted the appellees' motion[s] for a directed verdict." He advances four issues to us, namely:

"1. Whether termination of an adult education teacher without a hearing violates his due process rights.

2. Whether termination of an adult education teacher for his exercise of free speech violates his First Amendment rights.

"3. Whether a factual issue — the existence of a good faith defense — is the proper subject of a directed verdict.

4. Whether a municipality is entitled to the good faith defense of its officers when the County has deprived an employee of his constitutional rights."

We think the four issues may be reduced in number to one, and that is:

> Whether a person hired as a temporary part-time employee has a constitutionally protected interest in the continuation of his employment, when it is terminated in accordance with the contract terms.

A similar question to that raised here was present in *Parker v. Board of Education of Prince George's County, Md.,* 237 F. Supp. 222 (D.C. Md.), *aff'd,* 348 F.2d 464 (4th Cir. 1965), *cert. denied,* 382 U.S. 1030, 86 S. Ct. 653, 15 L. Ed. 2d 543 (1966). Parker, a probationary teacher in the public schools in Prince George's County, brought suit against the County Board of Education. Parker alleged that the County Board had denied him due process of law by terminating his employment without a hearing. He said that the termination resulted from his assigning and teaching from a particular book,[4] and, therefore, the Board of Education denied him the right of free speech. The probationary teacher's contract with the Board of Education of Prince George's County provided that "either of the parties to the contract may terminate it at the end of the first or second year by giving thirty days' notice in writing to the other during the month of June or July." *Id.* at 224.

The United States District Court (District of Maryland) concluded that the County Board's action terminating the contract was strictly in compliance with the provisions of the agreement, and no constitutional rights were infringed. Then Chief Judge Thomsen (now a Senior District Judge) held that a probationary teacher does not have a constitutional right to a hearing before the County Board on termination of his contract, if the termination is in accordance with the terms of the contract. The judge further concluded that Parker's allegations did not demonstrate that he was denied freedom of speech. Judge Thomsen wrote:

> "Even if such allegations were present, they would afford no ground for the relief sought in this

---

4. Aldous Huxley's, *Brave New World.*

case. The right of free speech or expression, like other First Amendment guarantees, is not absolute. Where the abridgement of the abstract right of free speech results from government action taken for the protection of other substantial public rights, no constitutional deprivation will be found to exist, American Communications Ass'n., CIO v. Douds, 339 U.S. 382, 70 S. Ct. 674, 94 L.Ed. 925 (1950). No unconstitutionality results where the right of free speech is reasonably curtailed as a prerequisite to continued government employment. Ibid, at p. 398; United Public Workers of America v. Mitchell, 330 U.S. 75, 95, 67 S.Ct. 556 [, 91 L.Ed. 754] (1947); Opinion of the Justices, 332 Mass. 785, 127 N.E.2d 663 (1955)." 237 F. Supp. at 229.

On appeal, the United States Court of Appeals (4th Cir.), in *Parker v. Board of Education of Prince George's County, Md.,* 348 F.2d 464 (1965), determined that it was unnecessary to consider the merits of the alleged deprivations of constitutional rights. The Court said:

"We need not pass on the merits of the Fifth, Fourteenth and First Amendment deprivations and abridgement asserted by the appellant, consisting of the Board's termination of his employment (1.) without a hearing and (2.) because of his instruction from a book which he said had been proscribed by the Board in violation of freedom of speech. Our decision rests entirely on the contract. By its terms Parker was only employed provisionally and wholly without academic tenure, express or implied. The agreement was that his engagement was simply probationary and 'that either of the parties to this contract may terminate it at the end of the first or second school year by giving thirty days' notice in writing to the other during the month of June or July.' Concededly, the termination complied with this stipulation. We join the District Judge in upholding the Board's action on this ground. Parker

v. Board of Education, 237 F. Supp. 222 (D.C. Md. 1965)." 348 F.2d at 465.

De Bleecker's employment contract was not offered into evidence, and we do not have the advantage of having read it. Nevertheless, it was conceded at trial that De Bleecker was hired by the Board as a *temporary, part-time employee* for the specific purpose of teaching the inmates in the Center. His term of employment was undefined.

An employment contract for an unspecified term is terminable without liability at the will of either party. *Vincent v. Palmer,* 179 Md. 365, 370-71, 19 A.2d 183, 187 (1941). In *W.B. & A.R.R. Co. v. Moss,* 127 Md. 12, 21, 96 A. 273, 276 (1915), the Court of Appeals of Maryland opined:

"[N]o action will lie on the breach of a contract of employment unless there is a definite time fixed for the continuance of the employment. The reason for the rule is that the hiring would be one merely at will and could be terminated at the pleasure of either party." (Citations omitted.)

In the matter now before us, De Bleecker was not under contract with the Center. Center officials, however, had absolute discretion in determining whether De Bleecker was a threat to the security of the institution.

When the correctional authorities barred De Bleecker from the Center, the Board no longer needed his services. We think De Bleecker's discharge was in accord with the terms of his employment which provided that his job would continue "until such time as the program on which he was working terminated." Inasmuch as the Center would not allow De Bleecker to enter, the program, at least as far as he was concerned, was ended.

We agree with Judge McAuliffe that De Bleecker was not entitled to a pre-termination hearing, and the Board's action

in terminating De Bleecker's employment did not violate any of his constitutional rights.[5]

We think the granting of the motions for directed verdicts was proper.

*Judgments affirmed.*
*Costs to be paid by appellant.*

---

**5.** We need not decide whether De Bleecker's comments to the inmates amounted to First Amendment protected speech. Even if his speech were protected, his job was not. As Judge Thomsen noted in Parker, *supra,* "[N]o person has a constitutional right to public employment, either as a school teacher or in any other type of occupation." 237 F. Supp. at 227.